JUDGE OETKEN

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STANLEY MOSKAL, derivatively on behalf of CITIGROUP INC, | Civil Action No. 12 CV 3114 |
| Plaintiff, | |
| v. |  |
| VIKRAM PANDIT, JOHN C. GERSPACH, JOHN P. HAVENS, MANUEL MEDINA MORA, ALAIN J.P. BELDA, TIMOTHY C. COLLINS, ROBERT L. JOSS, MICHAEL E. O'NEILL, RICHARD D. PARSONS, LAWRENCE RICCIARDI, JUDITH RODIN, ROBERT L. RYAN, ANTHONY M. SANTOMERO, DIANA L. TAYLOR, WILLIAM S. THOMPSON, JR. and ERNESTO ZEDILLO PONCE DE LEON, | **JURY TRIAL DEMANDED** |
| Defendants. | |
| and | |
| CITIGROUP INC, | |
| Nominal Defendant. | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1.    This is a verified shareholder derivative action on behalf of nominal defendant Citigroup Inc ("Citigroup" or the "Company") against Citigroup's Board of Directors (the "Board") and certain of Citigroup's current and former executive officers and directors. This action seeks to hold Defendants (defined herein) liable for breach of their fiduciary duties of candor, good faith and loyalty, as well as unjust enrichment and aiding and abetting from 2011 to the present (the "Relevant Period") in connection with the award of excessive and unwarranted 2011 executive compensation.

## NATURE OF THE ACTION

2.    This is a failed "say on pay" shareholder derivative action, arising from the Board's unwarranted and excessive spending of Company (*i.e.*, stockholders') funds on executive

1

compensation -- namely, the Board's recent authorization of excessive 2011 compensation for executives who have presided over extremely disappointing Company performance.  In particular, the 2011 executive compensation awarded to top Citigroup executives totaled $54 million, including $15 million for Citigroup's Chief Executive Officer ("CEO") Vikram Pandit ("Pandit"), which represented a raise of 1,499,999,900% over his 2010 compensation.

3.      Meanwhile, defendants and, in particular, the Board's Personnel and Compensation Committee (the "Compensation Committee") have represented publicly that the Board's executive compensation practices are rooted in a pay-for-performance policy, which is dependent upon Company performance and enhancing stockholder value.  For example, in the Company's Proxy Statement filed with the U.S. Securities and Exchange Commission ("SEC") on Form DEF 14A on March 8, 2012 (the "Proxy"), the Board claimed that its executive compensation policy is designed to achieve ***"the long-term best interests of the stockholders*** . . ."  Additionally, the Board claimed that its executive compensation policy is contingent upon "enhance[ing] stockholder value."  Further, the Board claimed in the Proxy that in determining the amount of the executive compensation awards, it valued "overall company performance."

4.      Stated another way, the Company's executives should receive enhanced compensation only if they create meaningful and long-term performance for Citigroup stockholders, and they should receive less compensation when they do not.  Here, despite the Board's public statements, it awarded excessive compensation, particularly to defendant Pandit, in the wake of Citigroup's plummeting stock price and drastically reduced revenues.

5.      Indeed, in addition to violating its own stated pay for performance policy, the Board's decision to award excessive compensation for 2011 demonstrates that its prior statements that it would pay for performance and reward long-term performance were false and misleading.  This is

particularly true considering that "annual performance" in 2011 included the plummeting value of Citigroup stock by over 44%, and revenues of just $78.35 billion (as compared with 2010 revenues of $86.6 billion). This is likewise true regarding "long-term interest" of stockholders, as the price of the Company's stock has plummeted by almost **95%** over the past five years.

6.      Fortunately for Citigroup shareholders, a "say on pay" vote was conducted via the Proxy, whereby Citigroup shareholders were afforded the opportunity to voice their dissatisfaction with the Board's clear disregard for their interests, the Board's own prior statements regarding its pay for performance compensation policy, and the Board's apparent refusal to acknowledge the Company's dreadful performance in determining executive compensation (and, in particular, Pandit's compensation) for 2011. In the Proxy, the Board unsurprisingly recommended that Citigroup shareholders should approve the Board's 2011 executive compensation program and the excessive compensation (including the material pay increase for Pandit), despite the fact that defendants had obviously not delivered any short-term Company performance **or** any long-term performance to shareholders whatsoever.

7.      On April 17, 2012, a majority (approximately 55%) of voting Citigroup stockholders **rejected** the Board's 2011 senior officer compensation recommendation. Clearly, Citigroup shareholders concluded that 2011 compensation increases were not in their best interests, and that the Board was not paying for performance, as it had promised shareholders it would.

8.      Unfortunately for Citigroup stockholders, however, despite the adverse shareholder vote, the Board has not rescinded excessive 2011 executive compensation, **_nor_** has the Board indicated that they will do so.

9.      The directors on the Board breached their fiduciary duties by approving excessive 2011 compensation in the immediate wake of, among other things: (a) reduced revenues; and (b) the

plummet of the Company's stock price in 2011 (and, indeed, over the past five years), despite claiming to adhere to a pay-for-performance policy, which purportedly hinged upon, among other things, the Company's performance and the long-term interests of stockholders.  The inference that the Board breached its fiduciary duties is supported by the facts that: (1) a majority of the Company's stockholders voted that the 2011 executive compensation proposals were not in their best interests; and (2) the Board has failed to respond to the negative vote.  By falsely claiming that the Board paid for performance and that the Company's executive officers would be rewarded for Company performance, defendants also breached their fiduciary duties by issuing a series of materially misleading statements.

10.     For all of these reasons, the Board cannot now hide behind the so-called "business judgment rule," which is a summary judgment stage or trial stage defense, and which is only available to faithful fiduciaries.  Based on the particularized facts alleged herein, plaintiff (and the majority of the Company's voting stockholders) has cast doubt on the Board's decision-making process, as well as the accuracy and truthfulness of its public statements, and accordingly, this derivative action on behalf of the Company should proceed.

11.     By this shareholder derivative action, plaintiff seeks to recover damages and other relief on behalf of Citigroup against defendants for their breaches of the fiduciary duties of candor, good faith, and loyalty, and for unjust enrichment.  Absent this action, the majority will of the Company's stockholders shall be rendered meaningless, and the Company's rights against its wayward fiduciaries will not be exercised, to the further detriment of the Company.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question.  This Court has supplemental jurisdiction over the state law

claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the transactions and wrongs complained of herein, including defendants' participation in the wrongful acts detailed herein, occurred in this District and Citigroup maintains its corporate headquarters in this District.  Further, defendants either reside in or maintain executive offices in this District, and/or have received substantial compensation in this District by engaging in numerous activities and conducting business here, which had an effect in this District.

## THE PARTIES

14.     Plaintiff Stanley Moskal ("Plaintiff") is a shareholder of Citigroup and has held his stock continuously since January, 2009.  Plaintiff voted against the Board's 2011 proposed executive compensation.

15.     Nominal defendant Citigroup is a Delaware corporation with its executives offices located at 399 Park Avenue, New York, NY.  According to its public filings, Citigroup is a global diversified financial services holding company whose businesses provide a broad range of financial services to consumers and corporate customers.

16.     Defendant Pandit has served as a director of the Company and as its CEO since 2007.  Pandit was a member of Citigroup's Operating Committee (the "Operating Committee") during the Relevant Period.

17.     Defendant John C. Gerspach ("Gerspach") has served as the Company's Chief Financial Officer ("CFO") since July 2009.  In addition, Gerspach served as Citigroup's Controller from March 2005 until July 2009, and as its Chief Accounting Officer until July 2009.  Gerspach was a member of the Operating Committee during the Relevant Period.

18.     Defendant John P. Havens ("Havens") has served as the Company's President and

Chief Operating Officer ("COO") since January 2011.  In addition, Havens serves as the CEO of the Institutional Client Group of Citigroup, Inc.  Havens was a member of the Operating Committee during the Relevant Period.

19.     Defendant Manuel Medina Mora ("Mora") has served as the CEO of Global Consumer and Commercial Banking at Citigroup since November 2011, and as Chairman and CEO of Citigroup Latin America & Mexico Operations since March 11, 2004.  Mora was a member of the Operating Committee during the Relevant Period.

20.     Defendant Alain J.P. Belda ("Belda") served as a director of the Company from 1997 until April 17, 2012.  In addition, defendant Belda served as Chair of the Compensation Committee during the Relevant Period.

21.     Defendant Timothy C. Collins ("Collins") served as a director of the Company from 2009 until April 17, 2012.

22.     Defendant Robert L. Joss ("Joss") has served as a director of the Company since 2009.

23.     Defendant Michael E. O'Neill ("O'Neill") has served as Chairman of the Board since April 17, 2012, and has served as a director of the Company since 2009.  In addition, defendant O'Neill served as a member of the Compensation Committee during the Relevant Period.

24.     Defendant Richard D. Parsons ("Parsons") served as Chairman of the Board from 2009 until March 2012, and as a director of the Company from 1996 until March 2012.  In addition, defendant Parsons served as a member of the Compensation Committee during the Relevant Period.

25.     Defendant Lawrence Ricciardi ("Ricciardi") has served as a director of the Company since 2008.

26.     Defendant Judith Rodin ("Rodin") has served as a director of the Company since

2004.

27.     Defendant Robert L. Ryan ("Ryan") has served as a director of the Company since 2007.

28.     Defendant Anthony M. Santomero ("Santomero") has served as a director of the Company since 2009.

29.     Defendant Diana L. Taylor ("Taylor") has served as a director of the Company since 2009.  In addition, defendant Taylor served as a member of the Compensation Committee during the Relevant Period.

30.     Defendant William S. Thompson, Jr. ("Thompson") has served as a director of the Company since 2009.  In addition, defendant Thompson served as a member of the Compensation Committee during the Relevant Period.

31.     Defendant Ernesto Zedillo Ponce de Leon ("Zedillo") has served as a director of the Company since 2010.

32.     Defendants Pandit, Gerspach, Havens, Mora, Belda, Collins, Joss, O'Neill, Parsons, Ricciardi, Rodin, Ryan, Santomero, Taylor, Thompson and Zedillo shall be collectively referred to herein as "Defendants."

33.     Defendants Belda, O'Neill, Parsons, Taylor and Thompson shall be collectively referred to herein as the "Compensation Committee Defendants."

### THE DUTIES OF CITIGROUP'S DIRECTORS AND OFFICERS

34.     As directors and officers of Citigroup, the Defendants owed Citigroup and its shareholders an unremitting duty of loyalty that requires directors and officers to put the best interests of Citigroup's shareholders ahead of their own personal interests and the interests of Citigroup's corporate managers.  Directors who fail to act in the shareholders' best interests breach their fiduciary duty of loyalty and may be held liable for damages.  A claim for a breach of the duty

of loyalty is, as a matter of law, non-exculpable.

35.     Because of their executive and directorial positions with Citigroup, the Defendants knew or should have known that by increasing 2011 executive compensation following the plummeting value of Citigroup's stock and significantly decreased revenues, they were breaching their fiduciary duties of candor, good faith, loyalty and reasonableness owed to Citigroup, as well as unjustly enriching certain of the Company's senior officers.  The Defendants also knew or should have known that by unanimously recommending shareholder approval of the 2011 executive compensation in the Proxy, they were breaching their fiduciary duty of candor and violating the Board's purported pay-for-performance executive compensation policy.  There is doubt that those decisions were presumptively protected business judgments, and that the Board acted loyally in making these business judgments.

36.     Because of their executive and directorial positions with Citigroup, the Defendants also knew or should have known that the Proxy's (and other SEC filings') repeated representations that the Board only pays for performance were false and misleading.  By causing such statements to be made, the Defendants were breaching their fiduciary duties of loyalty, good faith, candor and independence owed to Citigroup and its shareholders, and these actions do not qualify for protection under the business judgment rule.  The 2011 executive compensation increases were inconsistent with the Board's stated pay for performance policy, and the Defendants' repeated statements to the contrary were designed to and did conceal the fact that the Board was overpaying the Company's executive officers via compensation plans premised on an illusory pay-for-performance policy.

37.     At all times relevant hereto, the Defendants were the agents of each of the other Defendants and were at all times acting within the course and scope of such agency.

38.     Pursuant to the Company's Compensation Committee charter, the Compensation

Committee Defendants were specifically obligated, *inter alia*, to:

> (a)     Annually review and approve corporate goals and objectives relevant to CEO compensation, evaluate the CEO's performance in light of these goals and objectives, and provide a report thereon to the Board;

> (b)     Annually review and determine, reflecting the advice of an independent compensation consultant, base salary, incentive compensation and long-term compensation for the CEO, and report the Committee's determination to the Board. In determining long-term incentive compensation of the CEO, the Committee may consider, among other factors, the Company's performance, the individual's performance, the value of similar incentive awards to individuals at the CEO position at comparable companies, and the quality of the Company's risk management policies and practices;

> (c)     Annually review and approve, reflecting as needed the advice of an independent compensation consultant and other advisors, base salary, incentive compensation and long-term incentive compensation for members of the Operating Committee;

> (d)     Review executive officer compensation for compliance with Section 16 of the Securities Exchange Act and Section 162(m) of the Internal Revenue Code, if applicable, and, if appropriate, any other applicable laws, rules and regulations;

> (e)     Fulfill the Committee's duties and responsibilities related to the compensation of executives and other employees under applicable legal authority or regulatory guidance, including such action to limit risks relating to incentive-based compensation as the Committee deems necessary under the Dodd-Frank Wall Street Reform and Consumer Protection Act and any regulations or guidance promulgated thereunder; and

> (f)     Review and, if appropriate, recommend to the Board that it approve compensation-related proposals to be voted upon by stockholders.

### AIDING AND ABETTING AND CONCERTED ACTION

39.     In committing the wrongful acts particularized herein, Defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design. In addition to the wrongful conduct particularized

herein as giving rise to primary liability, Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

40.     Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs detailed herein.  In taking such actions to substantially assist the commission of the wrongdoing detailed herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his, her, or its overall contribution to and furtherance of the wrongdoing.

## FACTUAL ALLEGATIONS

41.     According to its public filings, Citigroup is a global diversified financial services holding company whose businesses provide a broad range of financial services to consumers and corporate customers.

42.     Throughout the Relevant Period, the Board (and particularly, the Compensation Committee) overcompensated Citigroup's senior executives irrespective of the Company's actual performance, despite the Board's stated pay for performance policy, which purportedly hinged upon Company performance and long-term shareholder interests.  The Board is directly responsible for the disconnect between management and stockholder interests.

43.     Specifically, for 2011, Citigroup's revenues decreased by almost 10% to $78.35 billion from $86.6 billion in 2010.  Perhaps most strikingly, Citigroup stock suffered an enormous erosion in value.  On December 31, 2010, Citigroup stock closed at $47.30 per share.[1]  In stark contrast, on December 30, 2011, Citigroup stock closed at $26.31 per share, representing a one-year decline of *over 44%*.  More shockingly, the price of the Company's stock has decreased by almost

---

[1] Stock prices have been adjusted to reflect Citigroup's 10-for-1 reverse stock split on or about May 6, 2011.

*95%* in the past five years.  Moreover, in March 2012, the Federal Reserve refused Citigroup's request for a share buyback or dividend, following "stress tests" to see how the bank would perform in a severe financial downturn.  Nonetheless, the Board chose to handsomely reward the Company's executives with unwarranted compensation, and a massive pay increase for defendant Pandit.

44.     As detailed herein, in light of, *inter alia*, the Board's repeated pay-for-performance statements (including those in the Proxy), there is reason to doubt that: (a) the Board complied with its fiduciary duties; and/or (b) the Board's 2011 compensation decisions were protected business judgments.  Plaintiff alleges that the Board's 2011 compensation decisions constituted a breach of their fiduciary duties of candor, good faith and loyalty, as well as causing the Defendants to be unjustly enriched.

**The Board's Purported "Pay-For-Performance" Policy**

45.     Defendants have represented publicly that the Board's executive compensation practices are firmly rooted in a pay-for-performance policy.  For example, in the Proxy the Board claimed that its executive compensation policy is designed to achieve ***"the long-term best interests of the stockholders*. . ."**  Additionally, the Board claimed that its executive compensation policy is contingent upon "enhance[ing] stockholder value."  Further, the Board claimed in the Proxy that in determining the amount of the executive compensation awards, it valued "overall company performance."

46.     Stated obversely, the Company's executives should receive enhanced compensation only if they create short and long-term performance for Citigroup and its stockholders, and they should receive less compensation when they do not.  Despite its public statements, however, the Board did the exact opposite.

**2011 Executive Compensation**

47.     For 2011, Citigroup's five highest-paid officers -- defendants Pandit, Gerspach,

Havens, Leach and Mora -- collectively received $*54 million* in executive compensation, as detailed below:

| Name | Base Salary | | Cash Bonus | | Deferred Stock ( CAP )* | | Deferred Cash ( DCAP )* | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|
| Vikram Pandit | $ | 1,671,370 | $ | 5,331,452 | $ | 3,998,589 | $ | 3,998,589 | $ | 15,000,000 |
| John Gerspach | $ | 500,000 | $ | 2,200,000 | $ | 1,650,000 | $ | 1,650,000 | $ | 6,000,000 |
| John Havens | $ | 500,000 | $ | 5,000,000 | $ | 3,750,000 | $ | 3,750,000 | $ | 13,000,000 |
| Brian Leach | $ | 500,000 | $ | 3,400,000 | $ | 2,550,000 | $ | 2,550,000 | $ | 9,000,000 |
| Manuel Medina-Mora | $ | 546,966 | $ | 4,181,214 | $ | 3,135,910 | $ | 3,135,910 | $ | 11,000,000 |

48.     Thus, despite the fact that the Board's pay for performance policy was based upon Company performance and "***achieving the long-term best interests of the stockholders***," (neither of which has been accomplished) the Board still gave defendant Pandit an astronomical raise of $14,999,999 from his 2010 compensation.

**A Majority of Citigroup's Shareholders Reject the Board's Business Judgment**

49.     Fortunately for the Company's shareholders, on March 8, 2012, a "say on pay" was conducted via the Proxy, whereby Citigroup shareholders were given the chance to voice their dissatisfaction with the Board's clear disregard for their interests, the Board's own prior statements regarding its pay for performance compensation policy, and the Board's apparent refusal to acknowledge the Company's dreadful performance in determining executive compensation for 2011. The Company's stockholders were thus afforded the opportunity to vote on whether, as the Board claimed, the interests of Citigroup's executive officers' were in fact aligned with those of long-term shareholders.

50.     Prior to the Company's 2012 say on pay vote, the Board published the Proxy, wherein it "recommended" to Citigroup shareholders that they should approve Citigroup's 2011 executive compensation, stating:

> The board recommends that you vote **for** advisory approval of the foregoing resolution approving Citi's executive compensation as disclosed in the Compensation

Discussion and Analysis, the compensation tables and any related materials contained in this proxy statement.

51.     In July 2010, the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act") was enacted to require certain public companies to submit executive compensation plans to a shareholder vote, widely known as a "say on pay" vote. *See e.g.* 15 U.S.C. Section 78n-1.[2]  Congress intended Dodd-Frank's say-on-pay vote to function as a referendum on whether the executive compensation awarded was in the best interests of shareholders.  *See* S. Rep. No. 111-176, at 133 (2010) ("shareowner votes on pay [were meant to] serve as a direct referendum on the decisions of the compensation committee and [] offer a more targeted way to signal shareowner discontent than withholding votes from committee members.").  Indeed, according to a Senate Banking Report, the purpose of the Dodd-Frank Act's say-on-pay vote is to provide an efficient means for shareholders, as the owners of a corporation, to collectively express whether the corporation's executive compensation is in their best interests as shareholders.  *See* S. Rep. No. 111-76, at 133.

52.     In their relatively short history, negative "say on pay" votes on executive compensation have been extremely rare.  For instance, between March 2010 and March 2011, out of 101 companies with say-on-pay voting, only two companies had negative votes rejecting the proposed pay: Jacobs Engineering Group, Inc. and Beazer Homes USA, Inc.   *See*

_____

[2]  Title IX of the Dodd-Frank Act, known as the Investor Protection and Securities Reform Act of 2010, contains the "say-on-pay" provisions at Subtitle E (Accountability and Executive Compensation), Section 951, requiring, among other things, that "[n]ot less frequently than once every 3 years, a proxy or consent or authorization for an annual or other meeting of the shareholders for which the proxy solicitation rules of the Commission require compensation disclosure shall include a separate resolution subject to shareholder vote to approve the compensation of executives . . ."

www.pionline.com/article/20110315/DAILYREG/110319948.[3]  Accordingly, during the first year of

"say on pay" votes under the Dodd-Frank Act, voting shareholders overwhelmingly endorsed

companies' pay programs, providing 91.2% support on average.  *See* June 28, 2011 article entitled

"U.S. Proxy Season Review: 'Say on Pay' Votes" available at http://blog.riskmetrics.com (the "June

28 Risk Metrics Article").

53.     This support exceeded the 89.2% average shareholder approval rate in 2010, when

"say on pay" votes were mandated only at U.S. government-supported financial firms.  As of June

28, 2011, shareholders had rejected compensation proposals in say on pay votes at only 37

companies, or just *1.7%* of the more than 2,200 companies in the Russell 3000 index.

54.     Thus, shareholders have almost uniformly supported companies' pay programs, and

they have done so by overwhelming margins.  Indeed, of the 1,873 companies that reported voting

results as of May 27, 2011, more than two-thirds of those companies received 90% support or more

from their voting shareholders.  As of April 17, 2012, 175 companies had held say on pay votes in

the calendar year, and 90.4% were approved.

55.     Citigroup shareholders, however, have notably expressed their disapproval of the

Board's 2011 compensation decisions.  On April 17, 2012, a majority (55%) of Citigroup's voting

shareholders resoundingly *rejected* the Board's business judgment and its 2010 executive

compensation decision.

56.     The Board has done nothing substantive in response to the negative vote, which is in

---

[3] In the prior year's proxy season (the 2010 proxy season), over 600 companies held say-on-pay votes, and only three of those companies failed to obtain shareholder approval: KeyCorp, Motorola, Inc., and Occidental Petroleum Corp.  *See* http://josephandcohen.com/2010/06/joseph-law-newsbrief-%e2%80%9csay-on-pay%e2%80%9d-lessons-from-keycorp%e2%80%99s-2010-%e2%80%9cno-on-pay%e2%80%9d-vote/.

itself a breach of fiduciary duty.[4]

57.      The directors on the Board breached their fiduciary duties by materially increasing 2011 executive compensation for defendant Pandit in the immediate wake of the plummeting value of Citigroup stock and falling revenues, after claiming to adhere to a pay-for-performance policy based on Company performance and long-term stockholder interests.  The inference that the Board breached its fiduciary duties is supported by the facts that: (1) a majority of the Company's stockholders voted that 2011 executive compensation was not in their best interests; and (2) the Board has failed to respond to the negative vote in any meaningful or substantive way.  By falsely claiming that the Board paid for performance and that the Company's executive officers would be rewarded for delivering Company performance, the Board also breached its fiduciary duties by issuing a series of materially misleading statements.

58.      Thus, there is reason to doubt that the Board's actions and public representations were taken or made loyally, and/or in good faith, and/or are entitled to the presumptive protections of the business judgment rule.

## DAMAGES TO CITIGROUP

59.      Citigroup has been damaged by the Board's awards of unwarranted and outsized executive compensation.  During 2011, the Company's stock price plummeted and revenues dramatically decreased.  Yet, incredibly, executive compensation for the Company's CEO increased by $14,999,999, in direct violation of the Board's purported "pay for performance" compensation

---

[4] Importantly, and as touted by Defendants in the Proxy, when Citigroup held its previous say on pay vote in April 2011 for approval of 2010 executive compensation, 92.9% of the votes were in favor of the compensation.  Critically, if Defendants are content to tout a positive say on pay vote, then they must likewise suffer the consequences of a negative say on pay vote.

policy."

60.     When given the opportunity to offer their own independent judgment of the Board's award of 2011 executive compensation, a majority of Citigroup's voting shareholders firmly rejected the 2011 executive compensation (and rightfully so).  Yet, even in the face of this visceral reaction by Citigroup's shareholders, the Board has not altered or amended the 2011 compensation, to the detriment of the Company and its stockholders.  In fact, the Board has done nothing in response to the negative vote.  By contract, the Citigroup executives who received the excessive 2011 compensation have been unjustly enriched.

61.     By this derivative action, Plaintiff seeks to recover damages and other relief for Citigroup against Defendants for their breaches of the fiduciary duties of candor, good faith and loyalty, and for unjust enrichment.  Absent this action, as the Board has already amply demonstrated, the majority will of the Company's stockholders shall be rendered meaningless and the Company's rights against its wayward fiduciaries will not be exercised to the further detriment of the Company.

### DEFENDANTS CAUSED CITIGROUP TO ISSUE THE MATERIALLY FALSE AND MISLEADING PROXY

62.     During the Relevant Period, Defendants caused Citigroup to disseminate to shareholders the Proxy in connection with the Company's annual shareholder meeting.  Defendants drafted, approved, reviewed and/or signed the Proxy before it was filed with the SEC and disseminated to Citigroup shareholders.  Defendants knew, or were deliberately reckless in not knowing, that the Proxy was materially false and misleading.

63.     In particular, in the Proxy, the Board claimed that its executive compensation practices aligned management/stockholder interests because it paid-for-performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, which benefitted the "long-term best interests of [] stockholders."

64.     Defendants' statements in the Proxy were false and misleading, because even though the Company's stock price and revenues fell dramatically in 2011, and the value of the Company's stock has eroded by almost 95% over the past five years, defendant Pandit's total compensation has actually risen by 1,499,999,900% in 2011 as compared to his 2010 compensation.  Accordingly, the Proxy clearly contained the false and misleading statements that the Board allegedly "paid for performance."

## DERIVATIVE AND DEMAND ALLEGATIONS

65.     Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

66.     Plaintiff brings this action derivatively on behalf of Citigroup to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of Defendants' misconduct.  Plaintiff is a current holder of Citigroup common stock and will adequately represent the interests of the Company in this litigation.  Plaintiff has retained counsel experienced in litigating this type of action.

67.     The Board is currently comprised of the following twelve (12) directors: defendants Joss, O'Neill, Pandit, Ricciardi, Rodin, Ryan, Santomero, Taylor, Thompson and Zedillo, and non-defendants Franz B. Humer and Joan E. Spero.

68.     There is doubt that the Board's decision to issue the 2011 executive compensation, which resulted in a raise of $14,999,999 for defendant Pandit, was a protected business judgment, which excuses demand.  The Board claimed that its executive compensation practices aligned management/stockholder interests because it paid-for-performance and the Company's executives would receive enhanced compensation only if they achieved increases in the Company's performance, which benefitted the "long-term best interests of [] stockholders."  Based on these representations (among others), a majority of the Company's stockholders rejected the Board's 2011 executive compensation recommendation.  These undisputed facts raise doubt that the Board's 2011

compensation decision was a protected business judgment.  Thus, demand is excused.

69.     A majority of the Board is interested in a demand because there is substantial likelihood that they will be held liable for their conduct.  In particular, the Board claimed that its executive compensation practices aligned management/stockholder interests because it paid-for-performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, which benefitted the "long-term best interests of [] stockholders."  Therefore, executives should only receive enhanced compensation if both short and long-term performance was delivered to Citigroup and Citigroup stockholders.  Based on these representations (among others), a majority of the Company's stockholders rejected the Board's 2011 executive compensation recommendation, and the Board has failed to meaningfully respond to the negative vote.  These undisputed facts raise doubt that a majority of the Board complied with their fiduciary duties of loyalty and good faith.  Thus, demand is excused.

70.     There is doubt that the Board's decision to issue false and misleading statements regarding its purported "pay-for-performance" policy was a protected business judgment, which excuses demand.  In particular, the Board claimed that its executive compensation practices aligned management/stockholder interests because it paid-for-performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, which benefitted the "long-term best interests of [] stockholders."  Despite these representations, even though the Company's stock price and revenues materially declined, the Board still awarded the enhanced executive compensation, in direct contravention of their previously stated "pay-for-performance" policy.  The Board's false and misleading statements raise doubt that they are entitled to the protections of the business judgment rule.  Thus, demand is excused.

71.     A majority of the Board is interested in a demand because there is substantial

likelihood that they will be held liable for their misconduct.  In particular, the Board claimed that its executive compensation practices aligned management/stockholder interests because it paid-for-performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, which benefitted the "long-term best interests of [] stockholders."  Despite this representation, even though the Company's stock price and revenues materially declined, the Board still awarded the enhanced executive compensation, in direct contravention of their previously stated "pay-for-performance" policy.  Accordingly, the Board's false and misleading statements raise doubt that the entire Board complied with their fiduciary duties of loyalty and good faith.  Because the entire Board faces a substantial likelihood of liability in connection with the issuance of false and misleading statements,  demand is excused.

72.    A pre-suit demand is excused because the entire Board recommended publicly that Citigroup's shareholders unanimously approve Citigroup's 2011 executive compensation, including material pay increases for Citigroup's CEO.  On April 17, 2012, a majority (55%) of Citigroup's voting shareholders rejected the Board's recommendation.  Yet, the Board has not altered or otherwise amended the 2011 executive compensation, nor indicated that it has any intention of doing so.  By first recommending that the Company's stockholders approve the excessive 2011 executive compensation, and then by failing to take any action whatsoever in the face of the adverse stockholder vote, the Board has openly demonstrated its hostility to this action and that a pre-suit demand upon it to take such action is a useless and futile act.  Accordingly, demand is excused.

73.    Pre-suit demand on defendant Pandit  is excused because his principal professional occupation is his employment as CEO of Citigroup.  In addition, Defendants have admitted in the Proxy that defendant Pandit is not independent.  Accordingly, defendant Pandit has received and continues to receive substantial monetary compensation and other valuable benefits (including the

excessive compensation complained of herein).   Thus, defendant Pandit lacks independence, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.

74.     Moreover, as alleged herein, Pandit received excessive and unwarranted executive compensation in 2011, and, as a result, was the direct recipient of financial benefits from the misconduct challenged herein that were not shared with Citigroup's stockholders.   Thus, Pandit is directly interested in a demand, and accordingly, pre-suit demand upon Pandit is excused.

75.     Pre-suit demand on defendant Joss is excused because Joss receives substantial monetary compensation from Citigroup for his role as a consultant to the Company.   Specifically, defendant Joss receives $350,000, payable in quarterly arrears, to provide consulting services during 2012 to the Company and its subsidiaries and affiliates.   In addition, Defendants have admitted in the Proxy that defendant Joss is not independent.   Thus, defendant Joss lacks independence, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.

76.     Defendants O'Neill, Taylor and Thompson are each interested in a demand as a result of their conduct on the Compensation Committee.   Pursuant to the Company's Compensation Committee charter, directors on the Compensation Committee are responsible for, *inter alia*, reviewing and setting executive compensation in conformity with the Board's pay for performance policy.   Defendants O'Neill, Taylor and Thompson breached their fiduciary duties of due care, loyalty, and good faith, because the Compensation Committee, *inter alia*, awarded the above-discussed 2011 executive compensation, which was wholly divorced from the Board's pay-for-performance criteria.   Therefore, defendants O'Neill, Taylor and Thompson (if not the entire Board) each face a substantial likelihood of liability for their breach of fiduciary duties and any demand

upon them is futile.

77.     A pre-suit demand is further excused because a majority of the Board (namely defendants Joss, O'Neill, Pandit, Ricciardi, Rodin, Ryan, Santomero, Taylor, Thompson and Zedillo) either were at fault for the misconduct described herein and/or are liable for the misconduct described herein.  As such, these Board members are disabled as a matter of law from objectively considering any pre-suit demand, rendering demand futile and excused.

## FIRST CAUSE OF ACTION
### Against the Defendants for Breach of Fiduciary Duty in Connection For the Issuance of False and Misleading Statements

78.     Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

79.     Each of the Defendants was a director and/or officer of Citigroup and as such owed to Citigroup the highest duty known to the law.  Each of the Defendants agreed to and did participate in and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of the fiduciary duties these Defendants owed to Citigroup.

80.     As demonstrated by the allegations above, the Defendants breached their fiduciary duties of loyalty, good faith, candor and independence owed to Citigroup and its shareholders, and failed to disclose material information and/or made material misrepresentations to shareholders regarding Citigroup's 2011 executive compensation policy.

81.     The Defendants have violated their fiduciary duties of care, loyalty, good faith, candor and independence owed to Citigroup and its shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the best interests of Citigroup and its shareholders.  As directors and/or officers of Citigroup, the Defendants participated in the wrongful acts alleged herein.  They thereby breached their fiduciary duties to Citigroup's shareholders.

82.     As corporate fiduciaries, the Defendants owed Citigroup and its shareholders a duty

of candor and full and accurate disclosure. As a result of the conduct complained of, the Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Citigroup's shareholders despite their duties to, *inter alia*, disclose the true facts regarding Citigroup. Thus, they have violated their duty of candor.

83.   In committing the wrongful acts particularized herein, the Defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design.

84.   At all relevant times, the Defendants collectively and individually initiated a course of conduct which was designed to and did: (i) conceal the fact that the Company was overpaying its directors and officers via compensation plans premised on an illusory pay for performance executive compensation scheme; and (ii) maintain their directorial and executive positions at Citigroup and the profits, power and prestige which they enjoyed as a result of these positions.

85.   In particular, in the Proxy, the Board claimed that its executive compensation practices aligned management/stockholder interests because it paid-for-performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, which benefitted the "long-term best interests of [] stockholders." Despite this (and other) representations, even though the Company experienced plummeting revenue and stock value, the Board still awarded excessive executive compensation, in direct contravention of their previously stated pay-for-performance policy. Accordingly, it is clear that the Board's repeated statements that it pays for performance were false and misleading.

86.   The Defendants' misconduct was not due to an honest error of judgment, but rather their bad faith and was done knowingly, willfully, intentionally or recklessly.

87.   By reason of the foregoing acts, practices and course of conduct, the Defendants have

failed to exercise good faith and instead have acted knowingly or in reckless disregard of their fiduciary obligations toward Citigroup and its public shareholders, harming Citigroup.

## SECOND CAUSE OF ACTION
### Against the Defendants for Breach of Fiduciary Duty in Connection with the Board's Compensation Practices

88.     Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

89.     Each of the Defendants was a director and/or officer of Citigroup and as such owed to Citigroup the highest duty known to the law. Each of the Defendants agreed to and did participate in and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of the fiduciary duties these Defendants owed to Citigroup.

90.     As demonstrated by the allegations above, the Defendants breached their fiduciary duties of loyalty, good faith, candor and independence owed to Citigroup and its shareholders by failing to adhere to the Company's purported pay-for-performance policy. In particular, in the Proxy, the Board claimed that its executive compensation practices aligned management/stockholder interests because it paid-for-performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, which benefitted the "long-term best interests of [] stockholders." Despite this (and other) representations, even though the Company experienced plummeting revenue and stock value, the Board still increased executive compensation, in direct contravention of their previously stated pay-for-performance policy. This increase in executive compensation in direct contravention of the Board's stated pay for performance policy was a breach of the Board's fiduciary duties.

91.     The Defendants have violated their fiduciary duties of care, loyalty, good faith, candor and independence owed to Citigroup and its shareholders, have engaged in unlawful self-dealing, and have acted to put their personal interests and/or their colleagues' interests ahead of the best interests of Citigroup and its shareholders. As directors and/or officers of Citigroup, the

Defendants participated in the wrongful acts alleged herein.  They thereby breached their fiduciary duties owed to Citigroup's shareholders.

92.      In committing the wrongful acts particularized herein, the Defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design.

93.      The Defendants' misconduct was not due to an honest error of judgment, but rather their bad faith and was done knowingly, willfully, intentionally or recklessly.

94.      By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise good faith and instead have acted knowingly or in reckless disregard of their fiduciary obligations toward Citigroup and its public shareholders, harming Citigroup.

### THIRD CAUSE OF ACTION
**Against the Defendants for Breach of Fiduciary Duty in Connection with the Failure to Respond to the Negative Say on Pay Vote**

95.      Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

96.      Each of the Defendants was a director and/or officer of Citigroup and as such owed to Citigroup the highest duty known to the law.  Each of the Defendants agreed to and did participate in and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of the fiduciary duties these Defendants owed to Citigroup.

97.      As demonstrated by the allegations above, the Defendants breached their fiduciary duties of loyalty, good faith, candor and independence owed to Citigroup and its shareholders by failing to amend or alter 2011 executive compensation in connection with the negative say on pay vote.  In particular, despite having their executive compensation program rejected by a majority of voting shareholders, the Board has done nothing meaningful in response, in direct violation of their fiduciary duties.

98.      The Defendants have violated their fiduciary duties of care, loyalty, good faith,

candor and independence owed to Citigroup and its shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of Citigroup and its shareholders.  As directors and/or officers of Citigroup, the Defendants participated in the wrongful acts alleged herein.  They thereby breached their fiduciary duties owed to Citigroup's shareholders.

99.     In committing the wrongful acts particularized herein, the Defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design.

100.     The Defendants' misconduct was not due to an honest error of judgment, but rather their bad faith and was done knowingly, willfully, intentionally or recklessly.

101.     By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise good faith and instead have acted knowingly or in reckless disregard of their fiduciary obligations toward Citigroup and its public shareholders, harming Citigroup.

## FOURTH CAUSE OF ACTION
### Against the Defendants for Unjust Enrichment

102.     Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

103.     As a result of the conduct described above, the Defendants will be and have been unjustly enriched at the expense of Citigroup, in the form of unjustified salaries, benefits, stock option grants and other emoluments of office.

104.     All the payments and benefits provided to the Defendants based upon or related to Defendants' executive compensation scheme were unjustly awarded and were undertaken at the expense of Citigroup, resulting in substantially unearned benefits.

105.     The Defendants should be ordered to disgorge the gains which they have and/or will unjustly obtain and/or a constructive trust should be imposed for the benefit of the Company.

## FIFTH CAUSE OF ACTION
### Against The Defendants for Violations of Section 14(a) of the Securities Exchange Act of 1934

106.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

107.   Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange Act of 1934, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9. Specifically, the Proxy violated §14(a) and Rule 14a-9 because it omitted material facts regarding the Company's compensation practices.

108.   The Proxy was false and misleading when issued because it falsely stated that the Board's pay for performance policy was designed to achieve "***the long-term best interests of the stockholders***" and that the Company's compensation policies aim to "enhance stockholder value." The Proxy stated that in determining the amount of the executive compensation awards, the Board likewise considered "overall company performance."

109.   These statements were false and misleading because, as described, *supra*, in 2011, Citigroup's revenues declined by almost 10% to $78.35 billion from $86.6 billion in 2010, and Citigroup stock likewise suffered enormous erosion in value of over 44% during 2011. Further, over the past five years, Citigroup shares have lost almost 95% of their value, which clearly is not in "the long-term best interests of the stockholders."

110.   In the exercise of reasonable care, Defendants should have known that the statements contained in the Proxy were materially false and misleading.

111.   The misrepresentations and omissions in the Proxy were material to plaintiffs in voting on the Proxy. The Proxy was an essential link in the accomplishment of the continuation of

Defendants' violation of the Company's compensation policies, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation, and the Company's compensation policies.

112.    The Company was damaged as a result of the Defendants' material misrepresentations and omissions in the Proxy.

<strong>PRAYER FOR RELIEF</strong>

WHEREFORE, Plaintiff demands judgment as follows:

A.    Against Defendants and in favor of Citigroup for the amount of damages sustained by the Company as a result of Defendants' violations of state and federal law;

B.    Extraordinary equitable and/or injunctive relief as necessary or permitted by law, equity and the statutory provisions sued hereunder, including disgorgement, attachment, impoundment, imposition of a constructive trust on or otherwise restricting the disposition/exercise of improvidently awarded executive compensation based upon false financial reporting and/or the proceeds of Defendants' trading activities or their other assets so as to ensure that Plaintiff on behalf of Citigroup has an effective remedy;

C.    Ordering the implementation and administration of internal controls and systems at Citigroup designed to prohibit and prevent excessive and/or unwarranted executive compensation payments to Citigroup's senior executives;

D.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, and accountants' and experts' fees, costs, and expenses; and

E.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 19, 2012

**LAW OFFICES OF CURTIS V. TRINKO, LLP**

By: _Curtis V. Trinko_
CURTIS V. TRINKO
JENNIFER E. TRAYSTMAN
EILEEN M. RYAN
16 West 46TH St., 7TH Floor
New York, New York 10036
Telephone: (212) 490-9550
Facsimile: (212) 986-0158
Email: ctrinko@trinko.com

**THE WEISER LAW FIRM, P.C.**
ROBERT B. WEISER
BRETT D. STECKER
JEFFREY J. CIARLANTO
JOSEPH M. PROFY
DAVID M. PROMISLOFF
22 Cassatt Avenue, First Floor
Berwyn, PA 19312
Telephone:  (610) 225-2677
Facsimile:  (610) 408-8062

**LAW OFFICE OF ALFRED G. YATES, JR., P.C.**
ALFRED G. YATES, JR.
GERALD L. RUTLEDGE
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Phone: (412) 391-5164
Fax: (412) 471-1033

*Counsel for Plaintiff*

## CITIGROUP INC. VERIFICATION

I, Stanley L. Moskal, hereby verify that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: 4 - 18 - 2017

Stanley L. Moskal