**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ X
                           :      Lead Case No. 12-cv-3114 (JPO)
                           :
IN RE CITIGROUP INC.         :
SHAREHOLDER DERIVATIVE  :      **ECF CASE**
LITIGATION                :      **Electronically Filed**
                           :
------------------------------------------------------ X
                           :
This Document Relates to:      :
                           :
All Actions                 :

------------------------------------------------------ X

### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REQUEST FOR LIMITED DISCOVERY

WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Counsel for Defendants Alain J.P. Belda,*
*Timothy C. Collins, Robert L. Joss, Michael E.*
*O'Neill, Richard D. Parsons, Lawrence R.*
*Ricciardi, Judith Rodin, Robert L. Ryan,*
*Anthony M. Santomero, Diana L. Taylor,*
*William S. Thompson, Jr., and Ernesto Zedillo*
*Ponce de Leon*

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

*Counsel for Defendants Vikram Pandit,*
*John P. Havens, John C. Gerspach,*
*Manuel Medina-Mora, and Brian Leach*

SIDLEY AUSTIN LLP

787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Counsel for Nominal Defendant*
*Citigroup Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...............................................................................................................4

    A.    The Board Immediately Responds To The Vote And Publicly Commits To "Fix" Those Aspects Of The Company's Compensation Program To Which Shareholders Objected........................................................................4

    B.    Plaintiffs Prematurely File Suit, Falsely Alleging That The Board Had Done "Nothing" To Respond To The Vote. ........................................5

    C.    Defendants Move To Dismiss But Plaintiffs Never Respond. .............................7

ARGUMENT ...................................................................................................................8

I.     PLAINTIFFS' SUIT, WHILE FRIVOLOUS, IS NOT "MOOT." ...................................9

II.    PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THEIR LAWSUIT WAS MERITORIOUS WHEN FILED...............................................................12

    A.    Under Delaware Law, No Fees May Be Awarded Unless The Complaint Was "Meritorious When Filed." ....................................................12

    B.    As Defendants' Unopposed Motion Has Already Demonstrated, Plaintiffs' Complaint Has No Merit........................................................14

          1.    Plaintiffs Lacked Standing To Commence This Derivative Action Because They Failed To Make Demand....................................15

          2.    The Complaint Fails to Allege Facts Sufficient To State A Plausible Claim For Relief......................................................17

    C.    Plaintiffs Had No Reasonable Hope Of Ultimate Success When They Commenced This Copycat Lawsuit........................................................17

    D.    Plaintiffs' Conclusory Assertions Regarding The "Strength" Of Their Complaint Are Insufficient To Establish Its Merit. ...............................18

III.   PLAINTIFFS' LAWSUIT IS NOT CAUSALLY RELATED TO THE POST-SUIT EVENTS. ........................................................................................20

IV.   PLAINTIFFS ARE NOT ENTITLED TO ANY DISCOVERY.....................................22

CONCLUSION ...............................................................................................................23

# TABLE OF AUTHORITIES

**CASES**                                                                         **Page(s)**

*Absolute Recovery Hedge Fund, LP v. Gaylord Container Corp.*,
185 F. Supp. 2d 381 (S.D.N.Y. 2002) ........................................................ 13-14

*Achtman v. Kirby, McInerney & Squire, LLP*,
464 F.3d 328 (2d Cir. 2006) ....................................................................... 13

*Allied Artists Pictures Corp. v. Baron*,
413 A.2d 876 (Del. 1980) ..................................................................... 8, 9, 14

*Assad v. Hart*,
No. 11-2269, 2012 WL 33220 (S.D. Cal. Jan. 6, 2012) ...................................... 18

*Brautigam v. Bratt*,
No. 98-9060, 2000 WL 1264289 (S.D.N.Y. Sept. 5, 2000) ............................. 14

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) ........................................................................... 15

*Chenensky v. New York Life Insurance Co.*,
No. 07-11504, 2012 WL 234374 (S.D.N.Y. Jan. 10, 2012) ........................... 13

*Chrysler Corp. v. Dann*,
223 A.2d 384 (Del. 1966) ...................................................................... 14, 19

*Dover Historical Society, Inc. v. City of Dover Planning Commission*,
902 A.2d 1084 (Del. 2006) ................................................................ 9, 10, 12

*Felder v. Casey*,
487 U.S. 131 (1998) .................................................................................... 13

*Freedman v. Adams*,
C.A. No. 4199-VCN, 2012 WL 1099893 (Del. Ch. Mar. 30, 2012),
*aff'd*, 58 A.3d 414 (Del. 2013) ....................................................... 16, 20, 21

*Gordon v. Goodyear*,
No. 12-369, 2012 WL 2885695 (N.D. Ill. July 13, 2012) ........................... 18, 19

*Greenfield v. Frank B. Hall & Co.*,
No. 8480, 1992 WL 301348 (Del. Ch. Oct. 19, 1992) .................................. 9, 20

*Grimes v. Donald*,
791 A.2d 818 (Del. Ch. 2000) ................................................................... 12

*Grimes v. DSC Communications Corp.*,
724 A.2d 561 (Del. Ch. 1998) ................................................................... 23

*Haberland v. Bulkeley*,
No. 11-463, 2012 WL 4788442 (E.D.N.C. Sept. 26, 2012) ............................................18

*Hanna v. Plumer*,
380 U.S. 460 (1965) ............................................................................................................13

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ...........................................................................................................23

*In re Citigroup, Inc. Shareholder Derivative Litigation*,
964 A.2d 106 (Del. Ch. 2009) ...........................................................................................20

*In re Cox Communications Inc. Shareholder Litigation*,
879 A.2d 604 (Del. Ch. 2005) .....................................................................................19, 20

*In re Gilat Satellite Networks, Ltd.*,
No. 02-1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ............................................19

*In re Goldman Sachs Group, Inc. Shareholder Litigation*,
No. 5215, 2011 WL 4826104 (Del. Ch. Oct. 12, 2011)......................................................16

*In re Oracle Securities Litigation*,
852 F. Supp. 1437 (N.D. Cal. 1994) ....................................................................................9

*Iron Workers Local Number 25 Pension Fund v. Bogart*,
No. 11-4604, 2012 WL 2160436 (N.D. Cal. Jun. 13, 2012).............................................18

*Jacobs Engineering Group, Inc. Consolidated Shareholder Derivative Litigation*,
No. BC454543, 2012 WL 1327780
(Ca. Super. Ct. of Los Angeles Cnty. Mar. 6, 2012) ........................................................18

*Kaplan v. Rand*,
192 F.3d 60 (2d Cir. 1999)...........................................................................................13, 14

*Koppel v. Wien*,
743 F.2d 129 (2d Cir. 1984).............................................................................................9, 13

*Laborers' Local v. Intersil*,
No. 11-4093, 2012 WL 762319 (N.D. Cal. Mar. 7, 2012) ...............................................18

*Louisiana Municipal Police Employees Retirement System v. Pandit*,
No. 08-7389, 2009 WL 2902587 (S.D.N.Y. Sept. 10, 2009) ...........................................15

*NECA-IBEW Pension Fund v. Cox*,
No. 11-451, 2011 WL 4383368 (S.D. Ohio Sept. 20, 2011) ............................................19

*Plumbers Local Number 137 Pension Fund v. Davis*,
No. 11-633, 2012 WL 104776 (D. Or. Jan. 11, 2012)................................................18, 19

*RLS Associates, LLC v. United Bank of Kuwait, PLC,*
    464 F. Supp. 2d 206 (S.D.N.Y. 2006) ...............................................................13

*Rosan v. Chicago Milwaukee Corp.,*
    Civ. A. No. 10526, 1994 WL 30524 (Del. Ch. Jan. 19, 1994) .........................18

*Santiago v. Pennsylvania National Mutual Casualty Insurance Co.,*
    613 A.2d 1235 (Pa. Super. 1992).......................................................................20

*Savoie v. Merchants Bank,*
    84 F.3d 52 (2d Cir. 1996) ...................................................................9, 13, 21

*Sun Equities Corp. v. Computer Memories, Inc.,*
    1988 WL 13565 (Del. Ch. Feb. 16, 1988) ........................................................22

*Swanson v. Weil,*
    No. 11-2142, 2012 WL 4442795 (D. Colo. Sept. 26, 2012)...................16, 18, 19

*Teamsters Local 237 Additional Security Benefit Fund v. McCarthy,*
    No. 2011-cv-197841, 2011 WL 4836230
    (Ga. Super. Fulton Cnty. Sept. 16, 2011).............................................16, 17, 18

*Waterside Partners v. C. Brewer Co.,*
    739 A.2d 768 (Del. 1999) ...........................................................................21, 22

*Weinberg v. Gold,*
    838 F. Supp. 2d 355 (D. Md. 2012) ..................................................................18

## REGULATIONS

17 C.F.R. § 229.402(b)(1)(vii)...............................................................................3

Defendants respectfully submit this memorandum of law in opposition to Plaintiffs' Counsel's Motion For An Award Of Attorneys' Fees And Expenses And Request For Limited Discovery (the "Fee Application" or "Application") [Dkt. Nos. 52-53].

## PRELIMINARY STATEMENT

Less than two days after Citigroup Inc.'s ("Citigroup" or the "Company") advisory vote on executive compensation failed to pass, Plaintiffs brought these putative shareholder derivative actions in a transparent effort to capitalize on any steps the Company would later take in response. When Defendants moved to dismiss the consolidated Complaint for failure either to make a demand or to state a claim, Plaintiffs did not even trouble themselves to respond. Instead, they audaciously proclaimed victory, asserting that they were the "driving force" behind unrelated events that took place after the motion was made, and voluntarily discontinued this action. Having taken no steps to prosecute their claims beyond filing their meritless copycat complaints, Plaintiffs now ask the Court to order Citigroup and its shareholders to bear the costs – to the tune of $6 million – of Plaintiffs' self-proclaimed "success." Because Plaintiffs' counsel did nothing and achieved nothing, they should take nothing for commencing this patently frivolous lawsuit.

Plaintiffs' Application invokes the "mootness" exception to the American Rule, which permits an award of attorneys' fees in cases where a defendant takes steps to moot a case and, in so doing, produces the benefit sought by the shareholder's suit. For fees to be awarded under this limited exception, however, the claims (i) must be moot, (ii) must have merit, and (iii) must have caused the mooting event. Plaintiffs' claims do not come close to meeting these required elements.

*First*, to be "moot," a defendant's action must "completely remedy" the wrong complained of, which is demonstrably not the case here. To the contrary, Plaintiffs' Complaint

focused solely on the $54 million in *annual* salary and incentive compensation awards granted for 2011 to Citigroup's top five executives (three of whom remain at the Company), which it derided as "excessive." Since *none* of that compensation has been clawed back, forfeited or otherwise returned, Plaintiffs' challenge to those annual awards, although frivolous, is plainly not moot. While Plaintiffs would like to take credit for the resignations of two of those five executives (Vikram Pandit and John Havens) – and the unvested *long-term retention compensation* they forfeited as a result – the Complaint neither sought those resignations nor challenged those long-term awards. As a result, Plaintiffs cannot now claim credit for righting "wrongs" their Complaint never alleged or securing "relief" they never sought. (*See* Argument Point I.)

Second, even if Plaintiffs' claims were "moot" – and they are not – the Complaint is utterly without merit and would have been dismissed at the outset. Under Delaware law (which governs here), a claim must be "meritorious when filed" before any fees may be awarded, meaning that the complaint must have been able to withstand a motion to dismiss and that, at the time of filing, plaintiffs must have had a reasonable hope that they would ultimately prevail on the merits. As set forth in detail in Defendants' motion to dismiss – which Plaintiffs never opposed – Plaintiffs (a) never had standing to commence this action in the first place under Federal Rule of Civil Procedure 23.1 and (b) failed to allege facts sufficient to state a cognizable claim against any of the Defendants under Rule 12(b)(6). Moreover, Plaintiffs clearly could not have had a *reasonable* hope that they would ultimately prevail because this case is no different from the slew of other "say on pay" cases that have been brought to date – including by these same law firms – none of which has survived on the merits. (*See* Argument Point II.)

Third, there neither was nor is any connection whatsoever between this lawsuit and the

post-suit events for which Plaintiffs claim credit. Even before the filing of this premature case, Citigroup's Board had already made a public commitment to review and address its executive compensation program in light of the negative "say on pay" vote and to "fix" those aspects of the program to which the Company's shareholders had objected. The notion that this baseless strike suit provided the impetus for the Board's immediate response to the vote (which pre-dated the suit), or that it was the "driving force" behind the resignations of the Company's two senior-most executives some months later and the long-term compensation they thereby forfeited, is patently absurd. Plaintiffs sought neither the resignations nor those forfeitures and those events had nothing to do with Plaintiffs' formulaic Complaint, the relief requested therein or the compensation this lawsuit challenged. (*See* Argument Point III.)

That Plaintiffs would make any application for fees in such circumstances is brazen in and of itself. That they would ask this Court to award them $6 million – representing an unprecedented award of over $9,000 per hour for the 643.5 (undocumented) hours they purport to have spent on this case and a lodestar multiple of more than 21 times – is flat out astonishing.

The Complaint here was copied from other "say on pay" complaints these same lawyers have filed against other companies in the past, as was the letter they sent to the Board months later. Apart from those cut-and-paste jobs, Plaintiffs did *absolutely nothing* to prosecute their claims. The reason Plaintiffs dedicated so little effort to this matter had nothing to do with their purported "diligence" or "efficiency." They did nothing because they well knew that the Board would ultimately take some action in response to the vote for which they could later claim credit since (a) the Board had already said so publicly, (b) the Company was required by law to disclose how it considered the results of the vote,[1] and (c) no sensible company that lost a "say

---

[1] *See* Item 402 of Regulation S-K, 17 C.F.R. § 229.402(b)(1)(vii).

on pay" advisory vote would ever simply ignore it.  To grant the Application under these circumstances would only create incentives for plaintiffs' lawyers to commence frivolous litigation in anticipation of inevitable corporate actions for no reason other than to obtain fees.

The Application should therefore be denied.

## BACKGROUND

### A. The Board Immediately Responds To The Vote And Publicly Commits To "Fix" Those Aspects Of The Company's Compensation Program To Which Shareholders Objected.

On Tuesday, April 17, 2012, at Citigroup's annual general meeting, shareholders were asked to vote on a non-binding advisory proposal for approval of the Company's 2011 executive compensation (the "Advisory Vote" or "Vote").  (Compl. ¶¶ 7-8.)  Preliminary results of the Advisory Vote, which were tallied and announced at the meeting, indicated that approximately forty-five percent of shareholders voted for that proposal, and fifty-five percent against.  (Eaton Decl., Ex. 1.)[2]  At the meeting, former Citigroup Chairman Richard Parsons, speaking on behalf of the Board, told shareholders that the Board viewed the outcome of the Vote as a "serious matter" and that the Board would consult with shareholders to determine their concerns.  (*Id.*)  Later that same day, in media interviews, Mr. Parsons reiterated that the Board considered the outcome of the Advisory Vote a "serious matter" and that it would reach out to shareholders to better understand their concerns about the Company's executive compensation program and take steps to "fix it."  (Eaton Decl., Ex. 2.)  Mr. Parsons's remarks were widely reported in the business press.  (*See* Eaton Decl., Exs. 3-4.)

On Wednesday, April 18, the Board discussed the results of the Vote and resolved to take a number of steps to address the Company's executive compensation program, including

---

[2]  References to "Eaton Decl." refer to the Declaration of Mary Eaton in Support of Defendants' Opposition To Plaintiffs' Counsel's Motion For An Award Of Attorneys' Fees And Expenses And Request For Limited Discovery, dated February 25, 2013.

engaging outside consultants to assist the Board in reviewing the program in light of shareholder concerns, meeting with major shareholders to address the Advisory Vote and understand their specific concerns, and maintaining an ongoing dialog with those shareholders and with the proxy advisory firms going forward.  (Eaton Decl., Ex. 23.)  Mr. Pandit, who was present for portions of the discussion, advised the Board that he too took the results of the Vote seriously, and agreed with the Board on the need for a compensation package that addressed the concerns of the shareholders.  (*Id.*)

Shortly thereafter, the Personnel and Compensation Committee engaged Frederick W. Cook & Co. to serve as its independent advisor.  As part of its review of executive compensation matters, members of the Personnel and Compensation Committee met or spoke with numerous Citigroup shareholders representing approximately 30% of the Company's common shares as well as proxy advisory firms to discuss executive compensation matters and the Advisory Vote. (Eaton Decl., Ex. 7 at 3.)

## B. Plaintiffs Prematurely File Suit, Falsely Alleging That The Board Had Done "Nothing" To Respond To The Vote.

On Thursday, April 19 – before the Company even announced the official results of the Vote[3] – the first of these three consolidated derivative actions was commenced, falsely alleging that the Board had done "nothing" in response to the Advisory Vote.  (*See* Moskal Compl. at ¶¶ 56, 72 [Dkt. 1]; Eaton Decl., Ex. 6.)  Soon thereafter, additional lawsuits were filed (including by the same plaintiffs' counsel) asserting similar claims based on the Advisory Vote and the Board's purported refusal to respond thereto (collectively, the "Litigation").  *See Sciuto v. Pandit*, No. 1:12-cv-03422 (S.D.N.Y. filed Apr. 30, 2012); *Kenney v. Pandit*, No.1:12-cv-03453 (S.D.N.Y. filed May 1, 2012).

---

[3] *See* Item 5.07 of SEC Form 8-K, Instruction 1.

In their Complaint, Plaintiffs allege that the Board breached its fiduciary duties by approving allegedly "excessive" compensation awards for 2011 and causing the Company to issue a proxy statement (the "Proxy Statement") that was false and misleading. (Compl. ¶ 4.) Specifically, the Litigation took aim at the "$54 million" in awards granted to Mr. Pandit, Mr. Havens and the three other named executive officers, John Gerspach, Brian Leach and Manuel Medina-Mora (Compl. ¶¶ 2, 53), copying the summary chart appearing in the Compensation Discussion And Analysis of the Proxy Statement:

| Name | Base Salary | Cash Bonus | Deferred Stock (CAP)* | Deferred Cash (DCAP)* | Total |
|---|---|---|---|---|---|
| Vikram Pandit | $ 1,671,370 | $5,331,452 | $ 3,998,589 | $3,998,589 | $ 15,000,000 |
| John Gerspach | $ 500,000 | $2,200,000 | $ 1,650,000 | $1,650,000 | $ 6,000,000 |
| John Havens | $ 500,000 | $5,000,000 | $ 3,750,000 | $3,750,000 | $ 13,000,000 |
| Brian Leach | $ 500,000 | $3,400,000 | $ 2,550,000 | $2,550,000 | $ 9,000,000 |
| Manuel Medina-Mora | $ 546,966 | $4,181,214 | $ 3,135,910 | $3,135,910 | $ 11,000,000 |

(*Compare* Compl. ¶ 53, *with* Eaton Decl., Ex. 8 at 52.) As the disclosures accompanying that chart made clear, the "$54 million" in awards challenged by Plaintiffs were *annual compensation awards* made "in respect of performance in 2011" and were comprised exclusively of annual salary plus annual incentives (deferred stock and deferred cash) under the Company's annual compensation program (the "Annual Compensation Awards"). (Eaton Decl., Ex. 8 at 52-53.) The Litigation did not challenge the grant of *long-term retention awards* – comprised of option grants, deferred stock awards, and profit sharing awards (the "Long-Term Retention Awards") – which were described in a different section of the Proxy Statement, involved different amounts, and are governed by different agreements. (*Id.* at 55-57; Eaton Decl., Exs. 9-13.)

The Board recognized the Litigation for what it was – a meritless strike suit brought by opportunistic plaintiffs' lawyers – and authorized the Company to issue a public statement that Citigroup regarded the Litigation to be completely "without merit" and that the Company would

seek dismissal of the suit "consistent with court rulings in similar cases." (Eaton Decl., Ex. 5.)

### C.     Defendants Move To Dismiss But Plaintiffs Never Respond.

Months went by and, except for Plaintiffs' efforts to resolve their leadership structure, virtually nothing happened in the action. Eventually, on August 27, 2012, Plaintiffs filed an Amended Consolidated Complaint. [Dkt. No. 29.] Defendants promptly moved to dismiss on the grounds that the Complaint failed to adequately plead demand futility under Rule 23.1 or state a claim under Rule 12(b)(6). [Dkt. No. 32.]

While the motion was pending, on October 16, 2012, the Company announced that Mr. Pandit and Mr. Havens had resigned from their positions (the "Resignations"). (Fee Appl. at 7-8.) Shortly thereafter, on October 19, Plaintiffs' counsel sent counsel for Defendants a letter (the "Standstill Letter") in which they threatened to seek injunctive relief unless, by October 22, 2012 at 5:00 p.m., the Board agreed to "freeze or standstill" any "benefits" to Mr. Pandit and Mr. Havens in connection with the Resignations pending resolution of this lawsuit or to "clawback" any such benefits that had already been paid. (Fee Appl., Ex. A.) The Board was provided with a copy of the Standstill Letter for its consideration. (Fee Appl., Ex B.) Despite the fact that the Board did not accede to any of Plaintiffs' requests by their deadline, Plaintiffs sought neither the injunctive relief they threatened in the Standstill Letter nor leave to amend the Complaint to reflect the recent developments.

On November 9, 2012, Citigroup filed a Current Report on Form 8-K with the Securities and Exchange Commission, disclosing the agreements reached with each of Mr. Pandit and Mr. Havens in connection with their separation from the Company. (Fee Appl., Ex. C.) As set forth in that filing, Mr. Pandit and Mr. Havens received their regular and preexisting base salary and benefits through the end of 2012 pursuant to standard Company policy, were awarded $6,653,333 and $6,792,222, respectively, as part of their annual incentive awards for their

contributions to Citigroup during 2012, and would continue to vest in their annual compensation awards granted to them for their performance in 2011 (*id.* at 2) – *i.e.*, the Annual Compensation Awards for 2011 challenged in the Complaint.  With respect to the Long-Term Retention Awards, by contrast, Mr. Pandit and Mr. Havens would no longer have an opportunity to earn, as applicable, the profit sharing, unvested stock options and/or deferred stock components of those awards pursuant to the terms of the plans under which the awards were granted.  (*Id.*)  It was only those unvested Long-Term Retention Awards, which the Complaint did not challenge, that would be "forfeited."  (*See id.*)

Although Plaintiffs' Complaint never sought the resignations of either Mr. Pandit or Mr. Havens or the return of their Long-Term Retention Awards, on November 13, 2012, Plaintiffs' counsel wrote to the Court requesting a 30-day suspension of briefing on Defendants' motion so that Plaintiffs could "evaluate the impact" of the foregoing events.  [Dkt. No. 37.]  At a subsequent telephonic conference, on November 28, 2012, Plaintiffs informed the Court that they intended to voluntarily dismiss their lawsuit and seek an award of attorneys' fees on the grounds that the Complaint had allegedly been "mooted."  (Eaton Decl., Ex. 14 at 4:17-5:10.)[4]

## ARGUMENT

The corporate benefit doctrine permits an award of attorneys' fees in cases where a defendant takes steps to moot a case and, in so doing, produces the benefit sought by the shareholder's suit and deprives counsel of the fees they would otherwise be awarded for bringing a meritorious claim.  *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980).

---

[4]  Plaintiffs also informed the Court that they intended to seek "limited" discovery in connection with their fee application.  (Eaton Decl., Ex. 14 at 7:21-24.)  It later became clear that the discovery they sought was not "limited" at all.  On December 14, 2012, Plaintiffs requested the Court to permit a 90-day period in which to take wide-ranging discovery in connection with their fee request, including the production of all documents concerning the circumstances of the Resignations as well as the depositions of five members of the Citigroup Board, including its Chairman, Mr. O'Neill.  That request was denied.  [Dkt. No. 40.]

However, because it is a "limited exception" to the American Rule that each side should bear its own costs, *Dover Historical Society, Inc. v. City of Dover Planning Commission*, 902 A.2d 1084, 1090 (Del. 2006), counsels' fees are recoverable for a "mooted" claim *only* if "(1) the suit was meritorious when filed; (2) action producing a benefit to the corporation was taken; and, (3) the benefit to the corporation was causally related to the suit." *Greenfield v. Frank B. Hall & Co.*, No. 8480, 1992 WL 301348, at *3 (Del. Ch. Oct. 19, 1992). As we demonstrate below, Plaintiffs' lawsuit is neither "moot" nor meritorious and had no connection whatsoever to the events that took place after it was filed.

## I.     PLAINTIFFS' SUIT, WHILE FRIVOLOUS, IS NOT "MOOT."

The standard for mootness is high and is satisfied only "when the beneficial corporate action *completely remedies* the wrong complained of[.]" *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1446 (N.D. Cal. 1994) (emphasis added); *see also Allied Artists*, 413 A.2d at 880 (mootness exception applies where defendant "takes the action that *cures the alleged wrong* to the corporation's benefit and thereby moots . . . the lawsuit") (emphasis added).[5] Plaintiffs have not come close to meeting that exacting standard.

The crux of the Complaint is that the 2011 compensation granted to Citigroup's five top executives – who were collectively awarded $54 million for their performance that year – was excessive and unwarranted in light of the Company's performance and at odds with Citigroup's pay-for-performance policy. (Compl. ¶¶ 2-3.) However, three of those five executives (defendants Gerspach, Leach, and Medina-Mora) are still officers of the Company and the $26 million in compensation that was collectively awarded to them for 2011 has not been affected in

---

[5] Plaintiffs' own authorities reinforce the strictness of the mootness requirement. *See, e.g.*, *Savoie v. Merchants Bank*, 84 F.3d 52, 54 (2d Cir. 1996) (reimbursement of trust account holders' losses mooted securities claims seeking such damages); *Koppel v. Wien*, 743 F.2d 129, 133 (2d Cir. 1984) (withdrawal of proposed amendment mooted suit that sought injunctive relief blocking the amendment's passage).

any way. Thus, as to those defendants – who comprise more than half of the recipients of the challenged awards and whose compensation accounts for more than 48% of the total challenged amount – there can be no argument that Plaintiffs' claims have been "mooted" by any events occurring after this lawsuit was commenced.

Plaintiffs' attack on the 2011 annual compensation awarded to Messrs. Pandit and Havens is not "moot" either. Plaintiffs mistakenly seem to believe that, because Messrs. Pandit and Havens forfeited certain *other* awards upon their departure from the Company, Plaintiffs should somehow be credited as the "cause" of that forfeiture. (Fee Appl. at 12.) But nowhere in the Complaint (or anywhere else) did Plaintiffs ever seek the Resignations of Messrs. Pandit and Havens. As such, their claims could not have been mooted by (nor should they be permitted to take credit for) "relief" they never even sought. *See Dover Historical Soc'y, Inc.*, 902 A.2d at 1093 (holding that it would "undermine the policy underlying the mootness exception" and "perversely reward the appellants" to grant fees for entirely unrequested post-suit conduct).

Nor have Plaintiffs obtained any of the relief they actually did seek, namely "disgorgement" of the compensation these two executives were allegedly "improvidently awarded." (Compl., Prayer for Relief.) The only amounts challenged in the Complaint relate to Messrs. Pandit and Havens's *Annual Compensation Awards* for 2011, totaling $15 million and $13 million, respectively. (*See* Compl. ¶¶ 2, 53-54.) But neither Mr. Pandit nor Mr. Havens was required to disgorge or forfeit *any* of that compensation, whether in connection with the Resignations or otherwise.[6] (Fee Appl., Ex. C at 2-3.) Rather, as set forth in the Company's November 9 Form 8-K, Messrs. Pandit and Havens forfeited only certain components of their *Long-Term Retention Awards*, specifically "the profit sharing [under the KEPSP], unvested stock

---

[6] Likewise, because Plaintiffs have not obtained any of the relief sought in the Complaint for the two causes of action challenging the compensation-related disclosures in the Company's Proxy Statement (Compl. ¶¶ 96-105; 117-124), those claims are plainly not "moot" either.

-10-

option, [and] deferred stock components of the retention award." (*Id.* at 2.)  But the Complaint

does not even mention most of those retention awards, let alone challenge them.[7]  Indeed, the

word "retention" nowhere appears in Plaintiffs' Fee Application, much less their Complaint.

Accordingly, the forfeiture of part of those Long-Term Retention Awards cannot render

Plaintiffs' claims moot.

Plaintiffs attempt to circumvent this fundamental defect in their quest for fees by relying

on the "relief" sought in the Standstill Letter.  (Fee Appl. at 13.)  That argument fails as well.

*First*, none of the "relief" sought in the Standstill Letter is anywhere to be found in the

Complaint and, despite having had ample opportunity to do so, Plaintiffs never sought leave to

amend to include it.  Further, Plaintiffs cite no authority – and we know of none – that permits

consideration of such extra-judicial correspondence in assessing whether Plaintiffs are entitled to

fees under the mootness doctrine.[8]

*Second*, even if the Court could consider the Standstill Letter, Plaintiffs did not obtain

any of the purported "relief" they sought.  Obviously, there was no "freeze or standstill"

agreement entered into with Messrs. Pandit and Havens, nor were any payments to either

individual "held in abeyance" pending resolution of this lawsuit or "claw[ed]back."  And,

although Plaintiffs insisted that the Company not pay anything to Messrs. Pandit and Havens

until this lawsuit was resolved – which is presumably what their reference to "exit packages"

---

[7]  While the KEPSP is referenced in the Complaint (*see, e.g.*, Compl. ¶¶ 55-62), Plaintiffs do not challenge any of the amounts awarded under the KEPSP (which were not payable until starting in 2013 and were contingent on future events), but only the accuracy of the Proxy Statement disclosures relating to Mr. Pandit's award.

[8]  The cases cited by Plaintiffs are inapposite (Fee Appl. at 10 n.16) because they awarded fees on the basis of pre-suit demand letters, which Plaintiffs' Standstill Letter expressly states it is *not* (*see id.*, Ex. A at 2-3).  It would set a harmful precedent if plaintiffs were encouraged to wait for a corporate announcement, send a "letter" requesting corporate "action," and then apply for an award of fees on the basis that the "letter" must have caused the company's response.  In fact, that appears to be the *modus operandi* of Plaintiffs' counsel here.  In the *Nutrisystem* case cited in their Fee Application, Plaintiffs' counsel similarly sent a post-suit "letter" with nearly identical language.  (*See* Eaton Decl., Ex. 15.)

was meant to capture – that did not happen either.  To the contrary, Messrs. Pandit and Havens were paid their salary through the end of 2012 in accordance with standard Company policy and were also each granted discretionary incentive awards totaling in excess of $13 million.[9]  (Fee Appl., Ex. C at 2.)

In short, because Plaintiffs have failed to obtain any of the relief they sought in their Complaint or the Standstill Letter, they are not entitled to any fees.  *See Dover Historical Soc'y, Inc.*, 902 A.2d at 1092 (denying fee request under the "'mootness' exception" for failure to show that the action was moot); *Grimes v. Donald*, 791 A.2d 818, 822 (Del. Ch. 2000) (noting that Delaware law "does not entitle a plaintiff to recover fees" absent a showing of mootness).

## II.  PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THEIR LAWSUIT WAS MERITORIOUS WHEN FILED.

Even if Plaintiffs' claims are moot – and they are not – an award of fees is not justified for the independent reason that this lawsuit, which Plaintiffs never bothered to prosecute, was not meritorious when filed.

### A.  Under Delaware Law, No Fees May Be Awarded Unless The Complaint Was "Meritorious When Filed."

Previously, Plaintiffs argued that Delaware law governed the issue of attorneys' fees and endeavored to show this Court how they would meet Delaware's stringent "meritorious when filed" standard.  (*See* Eaton Decl., Ex. 14 at 7:11-7:13, 8:5-12; Ex. 16 at 5-7.)  Now, apparently realizing that they cannot do so, Plaintiffs have done a complete about-face.  Because this lawsuit was brought pursuant to "federal question" jurisdiction, they claim, "federal law governs the instant application" (Fee Appl. at 10) and federal law does not require them to "show their

---

[9]  Mr. Pandit was awarded $6,653,333 and Mr. Havens $6,792,222.  (Fee Appl., Ex. C at 2.)

Action would have (or could have) survived a motion to dismiss" (*id.* at 2).[10]  Plaintiffs are wrong.

Plaintiffs' Complaint asserts one claim based on federal law over which this Court has "federal question" jurisdiction under 28 U.S.C. § 1331, and three claims based on Delaware law over which this Court has "supplemental jurisdiction" pursuant to 28 U.S.C. § 1367.  (Compl. ¶ 15.)  Under the *Erie* doctrine, therefore, the Court must apply federal substantive law to the federal claim, state substantive law to the state law claims, and "federal procedural law" to the case as a whole.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *see also Felder v. Casey*, 487 U.S. 131, 151 (1998) (state substantive law applies under *Erie* regardless of whether federal court "exercises diversity or pendent jurisdiction over state law claims"); *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 n.4 (2d Cir. 2006) ("[T]he Erie doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law.") (quotations omitted).[11]

In an "action grounded in state law claims of breach of fiduciary duty . . . state law governs the issue of counsel fee availability."  *Kaplan v. Rand*, 192 F.3d 60, 70 (2d Cir. 1999); *see also RLS Assocs., LLC v. United Bank of Kuwait, PLC*, 464 F. Supp. 2d 206, 213 (S.D.N.Y. 2006) ("attorneys' fees are considered substantive under the *Erie* doctrine").  Accordingly, where a complaint asserts both federal and state law claims, state law determines a plaintiff's entitlement to fees for state claims and federal law determines entitlement to fees for federal claims.  *Absolute Recovery Hedge Fund, LP v. Gaylord Container Corp.*, 185 F. Supp. 2d 381,

---

[10]  Even if federal law did apply (which it does not), none of Plaintiffs' authorities stand for the proposition that, in a shareholder derivative lawsuit such as this, a plaintiff is excused from demonstrating that it has standing to bring such claims before attorneys' fees may be awarded.  *See Savoie*, 84 F.3d 52; *Koppel*, 743 F.2d 129.

[11]  *See also Chenensky v. New York Life Ins. Co.*, No. 07-11504, 2012 WL 234374, at *2 (S.D.N.Y. Jan. 10, 2012) ("*Erie* analysis . . . applies to courts exercising supplemental jurisdiction as well as those exercising diversity jurisdiction.").

386 & n.15 (S.D.N.Y. 2002) (Delaware law "governs plaintiffs' entitlement to a fee insofar as the action rested on claims of breach of fiduciary duty," and federal law governs fee request on plaintiffs' federal law claim).

Plaintiffs' contention that their fee application is governed by federal law rests entirely on one case: *Brautigam v. Bratt*, No. 98-9060, 2000 WL 1264289 (S.D.N.Y. Sept. 5, 2000). (Fee Appl. at 10.) That case is inapposite because the "plaintiff [t]here assert[ed] a federal claim" and, therefore, the court correctly analyzed the plaintiff's fee application under federal law. (Eaton Decl., Ex. 17 at 3.)[12]

Accordingly, while the law of the forum governs Plaintiffs' right to fees for their single securities law claim, Delaware law governs the request as to their three state law claims. *Absolute Recovery Hedge Fund, LP*, 185 F. Supp. 2d at 386.

### B. As Defendants' Unopposed Motion Has Already Demonstrated, Plaintiffs' Complaint Has No Merit.

To "discourag[e] baseless litigation," Delaware law prohibits an award of attorneys' fees absent a showing that a plaintiffs' claims were "meritorious when filed." *Allied Artists*, 413 A.2d at 879. "A claim is meritorious within the meaning of the rule if it can withstand a motion to dismiss on the pleadings" and "the plaintiff possesses knowledge of provable facts which hold out some reasonable likelihood of ultimate success." *Chrysler Corp. v. Dann*, 223 A.2d 384, 387 (Del. 1966). Thus, a complaint cannot merely comprise "a series of unjustified and unprovable charges of wrongdoing to the disadvantage of the corporation," but "must have some factual

---

[12] Plaintiffs appear to base their reading of *Brautigam* on a single sentence in Judge Martin's opinion, in which he stated that "in *non-diversity cases* the right to attorneys' fees is procedural and thus determined under the law of the forum…." (Fee Appl. at 10 (quoting *Brautigam*, 2000 WL 1264289, at *1) (emphasis added).) Whether Judge Martin meant to suggest that the right to attorneys' fees is procedural in *supplemental jurisdiction* cases we cannot know for sure, but if that is what he meant, he was in error. As the Second Circuit has made clear, "state law governs the issue of counsel fee availability." *Kaplan*, 192 F.3d at 70. In any event, as a technical matter, Judge Martin's discussion of choice of law is *dicta*, because his decision rested entirely on whether there existed a common fund. *Brautigam*, 2000 WL 1264289, at *2.

basis" for making the charges. *Id*. "If there is none, then the conclusion follows that the action lacked merit and the plaintiff is entitled to no allowance for fees." *Id*. Plaintiffs cannot make such a showing.[13]

### 1. Plaintiffs Lacked Standing To Commence This Derivative Action Because They Failed To Make Demand.

As set forth more fully in Defendants' unopposed motion to dismiss, the Complaint's allegations are insufficient to withstand dismissal for failure to adequately plead demand futility under Rule 23.1.[14] The Complaint's demand futility allegations effectively rest on a single premise: that the directors face a "substantial likelihood of liability," and therefore are disabled from considering a demand, because they were responsible for approving the challenged compensation and the allegedly misleading Proxy Statement. (*See* Compl. ¶¶ 87-89, 94-95.)

Under Delaware law, "compensation decisions by an independent board are protected by the business judgment rule" unless "so disproportionately large as to be unconscionable and constitute waste." *Brehm v. Eisner*, 746 A.2d 244, 262 n.56 (Del. 2000). In addition, because Citigroup's certificate of incorporation "exculpates Citigroup's directors from personal liability for breaches of their fiduciary duty of care," Plaintiffs must "proffer sufficient particularized allegations of non-exculpated conduct – bad faith, intentional misconduct, disloyalty, etc. – to indicate substantial risk of director personal liability notwithstanding this exculpatory provision." *Louisiana Mun. Police Emps. Ret. Sys. v. Pandit*, No. 08-7389, 2009 WL 2902587, at *7 n.5 (S.D.N.Y. Sept. 10, 2009).

---

[13] Regardless of whether Plaintiffs are required to make a showing of merit under federal law as to their Section 14(a) claim, the basis for that claim is identical to Plaintiffs' disclosure-based Delaware law breach of fiduciary claim (Count I), which, as demonstrated herein, is patently without merit. In any event, the Complaint's Section 14(a) claim cannot support an award of fees under the corporate benefit exception because it is neither "moot" nor causally related to the post-suit events. (*See* Argument Points I and III.)

[14] A copy of Defendants' October 11, 2012 Memorandum of Law in Support of Defendants' Motion to Dismiss The Verified Consolidated Shareholder Derivative Complaint [Dkt. No. 34] is attached as Exhibit 18 to the Eaton Declaration.

The Complaint does not even assert a claim for waste, let alone allege facts sufficient to show waste under the stringent standards imposed by Delaware law. *In re Goldman Sachs Grp., Inc. S'holder Litig.*, No. 5215, 2011 WL 4826104, at *16 (Del. Ch. Oct. 12, 2011) ("Waste entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade.") Moreover, the Complaint's principal allegations – that the 2011 executive compensation was "excessive" in light of the negative Advisory Vote and declines in Citigroup's revenue and stock price – have repeatedly been rejected by courts as insufficient to rebut the business judgment protection afforded to compensation decisions, including in the "say on pay" context. *See, e.g., Swanson v. Weil*, No. 11-2142, 2012 WL 4442795 (D. Colo. Sept. 26, 2012); *Teamsters Local 237 Additional Sec. Benefit Fund v. McCarthy*, No. 2011-cv-197841, 2011 WL 4836230 (Ga. Super. Fulton Cnty. Sept. 16, 2011).

Nor is demand excused, as Plaintiffs assert, because the Board failed "to take any action" in response to the outcome of the Advisory Vote. (Compl. ¶ 90.) To the contrary, as the record before this Court amply shows, that allegation is demonstrably false given the public commitments made by the Board – *before* this lawsuit was commenced – to address the shareholder concerns that led to the negative vote. (*See supra* at 4.) At bottom, while Plaintiffs may disagree with the Board's business judgment about the appropriate level of executive compensation, that "cannot serve as grounds for imposing liability based on . . . waste." *Freedman v. Adams*, C.A. No. 4199-VCN, 2012 WL 1099893, at *14 (Del. Ch. Mar. 30, 2012) (quotations omitted), *aff'd*, 58 A.3d 414 (Del. 2013).

Plaintiffs similarly fail to allege a substantial likelihood of liability sufficient to excuse demand with respect to the alleged Proxy Statement misrepresentations. It is undisputed that the

Company's compensation philosophy and policies, the executive compensation awarded for 2011, the plans pursuant to which the awards were based, the Company's financial results, and its share price were all either disclosed by the Company or otherwise publicly available at the time of the Advisory Vote. Thus, shareholders had all the information they needed to assess whether the 2011 compensation awards were "in direct contravention of [the Board's] publicly stated executive compensation policy," as Plaintiffs claim. (Compl. ¶ 50.)[15]

2. **The Complaint Fails to Allege Facts Sufficient To State A Plausible Claim For Relief.**

As our unopposed motion to dismiss also demonstrated, the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim for substantially the same reasons that it should be dismissed under Rule 23.1, namely that it fails to allege facts – particularized or otherwise – showing waste, unjust enrichment, or a non-exculpated breach of fiduciary duty by the directors. *McCarthy*, 2011 WL 4836230, at III.C.1. (dismissing Dodd-Frank claim for failure to state a claim where complaint "fails to rebut the business judgment rule's presumptions"). Nor does it allege the elements necessary to support an actionable claim based on Citigroup's Proxy Statement disclosures. (*See* Eaton Decl., Ex. 18 at 33-34.)[16]

C. **Plaintiffs Had No Reasonable Hope Of Ultimate Success When They Commenced This Copycat Lawsuit.**

Plaintiffs could not have reasonably believed that the Complaint's conclusory allegations held out any likelihood of ultimate success when they commenced this lawsuit. Indeed,

---

[15] As explained in Defendant's motion, for many of the same reasons the Complaint fails to plead that the Board faces a substantial likelihood of liability, Plaintiffs have also not sufficiently alleged particularized facts creating a reasonable doubt, for purposes of establishing demand futility, that the Board conduct challenged herein was a valid exercise of business judgment. (*See* Eaton Decl., Ex. 18 at 29-30.)

[16] Likewise, the claims against the officer Defendants also cannot survive dismissal under Rule 12(b)(6) because (a) those Defendants can have no liability for claims based on the supposedly wrongful acts of the Board and (b) Plaintiffs have not pled and cannot plead facts sufficient to show that those Defendants were "unjustly enriched" as a result of the Board's compensation decisions. (*See* Eaton Decl., Ex. 18 at 33-35.)

Plaintiffs' rush to file a complaint that was virtually indistinguishable from complaints that have been dismissed in other "say on pay" cases undercuts any suggestion to the contrary. (*See* Eaton Decl., Exs. 21-22.)[17]  *See, e.g.*, *Rosan v. Chicago Milwaukee Corp.*, Civ. A. No. 10526, 1994 WL 30524, at *2 (Del. Ch. Jan. 19, 1994) ("indeed, it might be said that plaintiff's claims are not meritorious simply by virtue of their being premature").  And, given Delaware's stringent requirements for liability on a non-exculpated claim – *i.e.*, that Defendants acted with scienter – Plaintiffs could not have had a reasonable belief that they would ultimately succeed in proving facts showing that Citigroup's Board purposefully breached their fiduciary duties or knowingly caused the Company to violate the law.

### D. Plaintiffs' Conclusory Assertions Regarding The "Strength" Of Their Complaint Are Insufficient To Establish Its Merit.

Notwithstanding their prior concession that, "as part of the [fee] application," they must show that this lawsuit was "meritorious when filed" (Eaton Decl., Ex. 14 at 8:5-12), Plaintiffs have never refuted any of the above arguments, either in connection with Defendants' motion to dismiss or otherwise.  To the extent they have made any effort to meet that requisite threshold showing, their efforts fall woefully short.

*First*, Plaintiffs misstate the applicable standard.  It is not sufficient for a plaintiff to merely have "'some reasonable hope' of withstanding a motion to dismiss" at the time of filing, as Plaintiffs erroneously contend.  (Fee Appl. at 12 n.17 (mischaracterizing *Chrysler Corp.*, 223

---

[17] *See, e.g.*, *Haberland v. Bulkeley*, No. 11-463, 2012 WL 4788442 (E.D.N.C. Sept. 26, 2012) (applying Delaware law); *Swanson*, 2012 WL 4442795 (same); *Gordon v. Goodyear*, No. 12-369, 2012 WL 2885695 (N.D. Ill. July 13, 2012) (same); *Iron Workers Local No. 25 Pension Fund v. Bogart*, No. 11-4604, 2012 WL 2160436 (N.D. Cal. Jun. 13, 2012) (same); *McCarthy*, 2011 WL 4836230 (same); *Plumbers Local No. 137 Pension Fund v. Davis*, No. 11-633, 2012 WL 104776 (D. Or. Jan. 11, 2012) (applying Oregon and Delaware law) *adopted by* 2012 WL 602391 (D. Or. Feb. 23, 2012); *Weinberg v. Gold*, 838 F. Supp. 2d 355 (D. Md. 2012) (applying Maryland law); *Laborers' Local v. Intersil*, No. 11-4093, 2012 WL 762319 (N.D. Cal. Mar. 7, 2012) (applying California law); *Jacobs Eng'g Grp., Inc. Consol. S'holder Derivative Litig.*, No. BC454543, 2012 WL 1327780 (Ca. Super. Ct. of Los Angeles Cnty. Mar. 6, 2012) (same); *see also Assad v. Hart*, No. 11-2269, 2012 WL 33220 (S.D. Cal. Jan. 6, 2012) (dismissing claim based on say on pay vote under federal law for failure to state a claim and remanding all state law claims).

A.2d at 387).)  Rather, as *Chrysler* makes clear, Plaintiffs must have had "some reasonable hope" of "*ultimate success*."  *Chrysler Corp.*, 223 A.2d at 387 (emphasis added).  As the Delaware Chancery Court has noted, the *Chrysler* standard requires "some likelihood that the plaintiffs will achieve ultimate success in a court of law by proving that an actionable wrong has been committed," and not just a possibility that the "plaintiffs' lawyers . . . would be able to settle the case and obtain an award of fees." *In re Cox Commc'n Inc. S'holder Litig.*, 879 A.2d 604, 637 (Del. Ch. 2005).

*Second*, in touting the "strength" of their action, Plaintiffs offer no more than self-serving conclusory assertions that their Complaint is "well-pled" and "detailed" with "particularized allegations" supporting demand futility.  (Fee Appl. at 14.)  Such conclusory descriptions are patently insufficient. *See In re Gilat Satellite Networks, Ltd.*, No. 02-1510, 2007 WL 2743675, at *20 (E.D.N.Y. Sept. 18, 2007) ("A conclusory allegation unsupported by the record is an insufficient basis on which to award fees[.]").

*Third*, Plaintiffs' reliance on the outcomes in unrelated cases – involving different companies, different boards of directors, different governing laws, or different procedural postures – does not lend any support for the notion that Plaintiffs were likely to achieve ultimate success here.  (Fee Appl. at 14-16.)

- *NECA-IBEW Pension Fund v. Cox*, No. 11-451, 2011 WL 4383368 (S.D. Ohio Sept. 20, 2011) (Fee Appl. at 15), the sole "say on pay" decision cited by Plaintiffs in which demand was excused, was decided under Ohio law, which is materially different from Delaware law on demand futility issues.  Specifically, unlike Delaware, Ohio law permits a plaintiff to plead demand futility because a majority of the directors are named defendants in the suit.  *Cox*, 2011 WL 4383368, at *4 n.5.  As a result, courts applying Delaware law have expressly declined to follow *Cox*. *See, e.g.*, *Swanson*, 2012 WL 4442795, at *6-7; *Gordon*, 2012 WL 2885695, at *10-11.[18]

---

[18] Even under Ohio law, "it is unlikely that the [*Cox*] case remains viable legal authority" given that the *Cox* court's "holding was recently called into question in light of the court's apparent lack of subject matter jurisdiction." *Davis*, 2012 WL 104776, at *5-8.

- In *Louisiana Mun. Police Emps. Ret. Sys. v. Ritter*, CV-2009-001588 (Ala. Cir. Ct. Jefferson Cnty. May 6, 2010) (Fee Appl. at 15), which was not a "say on pay" case, the court initially declined to dismiss certain compensation-related claims based on particularized allegations that "defendants knew of the [poor] true financial situation and misrepresented or concealed those facts" from shareholders when making its compensation decisions. (*Id.*, Ex. D at 7, 10.) In contrast, the Complaint here does not allege, let alone with particularity, knowing misrepresentation or concealment by Defendants of the Company's financial situation. In any event, the plaintiffs in *Ritter* did not ultimately achieve any success on the merits of their claims because the court subsequently granted defendants' renewed motion to dismiss. (Eaton Decl., Ex. 19 at 2-3.)

- *Schatz v. Redling*, No. 11-24985 (Pa. Ct. Common Pleas, Montgomery Cnty. Feb. 13, 2012) (Fee Appl. at 16) was decided under Pennsylvania's liberal pleading rules, which mandate denial of a defendant's preliminary objection so long as plaintiffs' "recovery is possible." *Santiago v. Penn. Nat'l. Mut. Cas. Ins. Co.*, 613 A.2d 1235, 1238 (Pa. Super. 1992). That lax threshold is a far cry from the "reasonable likelihood of ultimate success" required under Delaware law. *Cox*, 879 A.2d at 636.

- *In re Citigroup, Inc., S'holder Derivative Litig.*, 964 A.2d 106 (Del. Ch. 2009) (Fee Appl. at 14), which related to compensation paid to former Citigroup CEO Charles O. Prince, involved entirely different facts and a different Board of Directors. Indeed, ten of the 12 members of Citigroup's current Board joined *after* the events involving Mr. Prince's compensation occurred and had no involvement in the challenged compensation. (Compl. ¶¶ 27-37, 85.) More importantly, the plaintiffs there ultimately abandoned their suit, and voluntarily dismissed the action with prejudice and without any payment of attorneys' fees, as Plaintiffs should do here. (*See* Eaton Decl., Ex. 20.)

Accordingly, because the Complaint was not meritorious when filed, this Court need not reach the issue of causation. *See Greenfield*, 1992 WL 301348, at *4 ("Plaintiff's counsel is not entitled to any attorney's fees, however, if the suit was not meritorious when filed regardless of whether there was a causal connection between the suit and any benefit to the corporation."); *Freedman*, 2012 WL 1099893, at *5 (because the plaintiff's failure to show "futility of demand [was] dispositive, it [was] the only issue reached by the Court" in denying fee application).

## III. PLAINTIFFS' LAWSUIT IS NOT CAUSALLY RELATED TO THE POST-SUIT EVENTS.

Under Delaware law, a determination that the alleged benefit "was causally related to the lawsuit" is a prerequisite to an award of attorneys' fees under the corporate benefit doctrine.

*Freedman*, 2012 WL 1099893, at \*5; *Waterside Partners v. C. Brewer Co.*, 739 A.2d 768, 770 (Del. 1999) ("Fee shifting is the exception rather than the rule in corporate litigation and the establishment of a nexus between the litigation, itself, and the claimed corporate benefit is a *sine qua non*."). Here, there was no causal relationship between this lawsuit and the events that took place after it was filed and Plaintiffs have not shown (because they cannot show) otherwise.[19]

Plaintiffs contend that the "strength" of this lawsuit and the purportedly "compelling allegations" of their "well-pled" Complaint caused the Board to terminate Mr. Pandit and Mr. Havens. (Fee Appl. at 3, 14.) In addition to commencing suit, Plaintiffs continue, they and their counsel "led the charge for every corrective action" the Company took, including the Board's alleged decision to "clawback" compensation that Mr. Pandit and Mr. Havens were previously awarded. (*Id.* at 2-3.) Plaintiffs' causation argument is neither plausible in theory nor supported by the facts.

The copycat Complaint filed here is no different from the slew of other "say on pay" derivative complaints (many filed by the very same plaintiffs' counsel) none of which has been successful on the merits. (*See supra* at Point II.B-C.) Given that established track record of defeat, it is simply implausible to infer, as Plaintiffs do, that the mere filing of this unmeritorious strike suit – barely two days after the Company's 2012 "say on pay" vote was held and before the results of the Vote were officially announced – must have caused the Board to terminate the Company's two senior-most executives many months later, *after* the Board had already gone to the time and expense of filing a vigorous motion to dismiss. It is more inconceivable still that, weeks later, the Board would then force those executives to forfeit compensation that was

---

[19]   Denial of the Fee Application would likewise be warranted under federal law, which, as Plaintiffs' own authorities show, imposes a more exacting causation standard than Delaware law. *See, e.g.*, *Savoie*, 84 F.3d at 56-57 ("[B]efore awarding fees . . . the court must determine whether plaintiff's suit was a *substantial cause* of the benefit obtained.") (emphasis added).

rightfully theirs for fear that the pending motion to dismiss – which Plaintiffs had yet to oppose – might lose.[20]

Beyond the patent absurdity of Plaintiffs' theory, the record before the Court shows that there was no causal connection whatsoever between this lawsuit and the events that took place thereafter.  The Board had already publicly committed to addressing the Company's compensation program, even before the first of these consolidated complaints was filed.  (*See supra* at 4.)  Over the next few months, the Board implemented its plan, including engaging an independent compensation consultant and meeting with major shareholders to understand their concerns, all without regard to this Litigation.  Simply put, the Board's actions "would have occurred . . . without any aid or stimulus from the filing of a complaint."  *Sun Equities Corp. v. Computer Memories, Inc.*, 1988 WL 13565, at *3 (Del. Ch. Feb. 16, 1988).

Nor is there any causal relationship between the Litigation and the terms of Mr. Pandit's and Mr. Havens's separation.  The Board did *not* in fact accede to any of the "demands" in the Standstill Letter.[21]  Likewise, the forfeiture of the unvested components of Mr. Pandit's and Mr. Havens's Long-Term Retention Awards would have occurred *regardless* of that letter or the Litigation because it was *required* under the terms of the plans pursuant to which those awards were made.  (*See supra* at 8; Eaton Decl. Exs. 9-13.)

## IV.     PLAINTIFFS ARE NOT ENTITLED TO ANY DISCOVERY.

Plaintiffs' position – set forth in a footnote – appears to be that broad discovery is required in *every* case to resolve a fee application.   (Fee Appl. at 21 n.29.)  But that is plainly

---

[20]  Plaintiffs' reference to alleged "benefits" their counsel "caused" in other derivative cases to rebut an argument that plaintiffs are "incapable" of causing such benefits is a straw man.  (Fee Appl. at 16-17.)  Putting aside that those cases involved settlements and are thus completely inapposite, Defendants are not contending that a plaintiff may never bring about remedial action, but rather that *this* unmeritorious lawsuit did not do so.

[21]  In any event, the Standstill Letter is irrelevant for purposes of causation.  *Waterside Partners*, 739 A.2d at 770 (denying fee application and disregarding plaintiffs' non-litigation conduct because "permit[ting] the award of litigation fees for efforts outside the litigation" is an "undesirable result").

not the law. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.")  Here, it cannot be the case that Plaintiffs are entitled to any discovery, much less "all documents" concerning the Resignations and depositions of five Citigroup directors, where they have failed to demonstrate either mootness or merit, both of which are dispositive threshold requirements for an award of fees.  Indeed, it would turn the law on its head if a plaintiff who is not entitled to discovery in opposing a motion to dismiss under Rule 23.1 (which Plaintiffs did not even attempt here) is nevertheless allowed to take wide-ranging and intrusive discovery in the context of a post-dismissal application for fees. *See Grimes v. DSC Commc'n Corp.*, 724 A.2d 561, 565-66 (Del. Ch. 1998) (it is "well settled law in Delaware that a plaintiff who files a derivative suit is not entitled to discovery in that action in order to assist him or her in meeting the particularized pleading requirements" for such lawsuits).[22]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Fee Application.

---

[22]  Given that Plaintiffs utterly fail to establish any entitlement to an award of fees, Defendants will not burden the Court at this time with a detailed discussion of the numerous flaws underlying Plaintiffs' request for a $6 million award, which represents over *$9,000 per hour* and a lodestar multiple of *more than 21 times*.  (Fee Appl. at 18.) Needless to say, Plaintiffs' fee request is woefully deficient under both the "reasonable hourly rate" and "percentage of the benefit" methods.  As to the former, Plaintiffs have not submitted *any* time sheets documenting, let alone showing the reasonableness of, the 643.5 "collective hours" of work they supposedly undertook in connection with this matter.  As to the latter, none of Plaintiffs' authorities support application of the "percentage of benefit" method in a derivative action where, as here, no monetary sum was recovered by the company.  (*Id.* at 22-23.)  Moreover, Plaintiffs offer no credible evidence substantiating the $43 million "value" they self-servingly ascribe to the alleged benefit achieved.  (*Id.*)  In the event this Court should determine that a fee award is appropriate, Defendants respectfully request that they be given an opportunity to further respond.

Dated: February 25, 2013
       New York, New York


                Respectfully Submitted,

| WILLKIE FARR & GALLAGHER LLP | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
|---|---|
| By: /s/Mary Eaton | Brad S. Karp (bkarp@paulweiss.com) |
| Mary Eaton (meaton@willkie.com) | Richard A. Rosen (rrosen@paulweiss.com) |
| Sameer Advani (sadvani@willkie.com) | Susanna M. Buergel (sbuergel@paulweiss.com) |
| 787 Seventh Avenue | 1285 Avenue of the Americas |
| New York, NY 10019 | New York, New York 10019 |
| (212) 728-8000 | (212) 373-3000 |

*Counsel for Defendants Alain J.P. Belda, Timothy C. Collins, Robert L. Joss, Michael E. O'Neill, Richard D. Parsons, Lawrence R. Ricciardi, Judith Rodin, Robert L. Ryan, Anthony M. Santomero, Diana L. Taylor, William S. Thompson, Jr., and Ernesto Zedillo Ponce de Leon*

*Counsel for Defendants Vikram Pandit, John P. Havens, John C. Gerspach, Manuel Medina-Mora, and Brian Leach*

SIDLEY AUSTIN LLP

Steven M. Bierman (sbierman@sidley.com)
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Counsel for Nominal Defendant Citigroup Inc.*